CROWN PAINT COMPANY, Appellant,

v.

George BANKSTON, Jr., Appellee.

Nos. 53060, 53428.

Supreme Court of Oklahoma.

Sept. 22, 1981.

Rehearing Denied Oct. 29, 1981.

Certiorari Denied Feb. 22, 1982.
See 102 S.Ct. 1444.

Bryce A. Baggett, Oklahoma City, for appellant.

Michael Gassaway of Miskovsky & Gassaway, Oklahoma City, for appellee.

BARNES, Vice Chief Justice:

## I.

In 1973, after many years of experience in the paint business, George Bankston opened his own paint supply company, Professional Paint Supply, as the sole proprietor. In that business, Mr. Bankston purchased paint from manufacturers, then resold it to his clients, who were the ultimate users of the paint and the paint-related products. In an effort to insure that he would have a continuous supply of paint for resale, Bankston entered into a contract with Crown Paint Company, a manufacturer/wholesaler and retailer of paint and related products. In entering into this contract, Mr. Bankston, seeking to protect his business, indicated to the president of Crown that he wanted Crown to agree that Crown would not call on anybody Bankston was selling Crown products to, and that if Crown ever found out that it was selling to one of Bankston's customers, Crown would back out. Crown's president stated that it was Crown's policy not to attempt to sell to customers of those Crown sold to at wholesale, saying that if Bankston would make a list of his customers to whom Crown paint was going to be resold, Crown would not call on them or sell paint to them. Bankston, seeking further to protect himself, chose not to disclose the name of his customers. Ultimately, Crown, acting in its retail capacity, did call upon and sell paint to Bankston's largest customer, CMI Corporation.

The controversy before us began when Crown filed a suit on an open account against Bankston, seeking to collect payment for paint sold to Bankston. Mr. Bankston filed a counterclaim alleging Crown's breach of their contract agreement not to compete. Crown received a summary judgment on its open account; no appeal was perfected from that judgment. After a series of continuances and mistrials, Bankston's action for breach of contract was submitted to a jury, which entered a judgment in favor of Bankston, fixing damages at $67,259.97.

Crown has perfected an appeal from that verdict and judgment (Case No. 53,060). Additionally, Crown perfected an appeal from the subsequent trial court order awarding attorney fees in the cause (Case No. 53,428). By prior order of this Court, these appeals have been consolidated.

Both in the trial court, and on appeal, Appellant, Crown Paint Company, argues that it was entitled to summary judgment against Appellee, Bankston, as a matter of law under 79 O.S. § 1 (1971), as said contract was between competitors on the same market level, to allocate territories or to minimize competition, i.e., a "horizontal restraint", which is a per se violation. Crown also argues that it was entitled to summary judgment against Bankston as a matter of law under 15 O.S. § 217 (1971), as said contract restricts a citizen from engaging in a lawful profession. Lastly, Crown argues that even if Bankston were to prevail, he is not entitled to an attorney fee.

## II.

Title 79 O.S. § 1 (1971) provides:

"Every act, agreement, contract, or combination in the form of trust, or otherwise, or conspiracy in restraint of trade or commerce within the state is hereby declared to be against public policy and illegal."

As we noted in *Teleco, Inc. v. Ford Industries*, 587 P.2d 1360 (Okl.1978): "It has long been recognized that every agreement concerning trade, and every regulation of trade, restrains trade to some extent, and that the very essence of such agreements is

to bind or restrain."[1] Because a liberal application of the provisions of 79 O.S. 1971 § 1 would outlaw every conceivable contract or combination which could be made concerning trade or commerce, courts have read into statutes such as 79 O.S. § 1 a "rule of reason", under which only those acts, contracts, agreements or combinations which prejudice public interests by unduly restricting competition, or unduly obstructing the due course of trade, or which injuriously restrain trade, are unlawful.[2]

Thus, as a general rule, only unreasonable restraints of trade, as measured by the "rule of reason", constitute a violation of statutes such as 79 O.S. § 1. However, certain restraints of trade, because of their pernicious effect on competition and lack of any redeeming virtue, are conclusively presumed to be unreasonable and, therefore, per se violations.[3]

The first question before us is whether the alleged contractual agreement between Crown and Bankston constituted a per se violation of 79 O.S. § 1 (1971).

In *Northern Pacific R. Co. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545, 549 (1958), Mr. Justice Black, explaining the appropriateness of, and the need for, a per se rule in dealing with alleged violations of Section 1 of the Sherman Antitrust Act, stated:

"[T]here are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use. This principle of per se unreasonableness not only makes the type of restraints which are proscribed by the Sherman Act more certain to the benefit of everyone con-

cerned, but it also avoids the necessity for an incredibly complicated and prolonged economic investigation into the entire history of the industry involved, as well as related industries, in an effort to determine at large whether a particular restraint has been unreasonable—an inquiry so often wholly fruitless when undertaken."

More recently, in the landmark case of *United States v. Topco Associates*, 405 U.S. 596, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972), the United States Supreme Court, in discussing the nature of agreements not to compete between competitors at the same market level, stated:

"... One of the classic examples of a per se violation of § 1 is an agreement between competitors at the same level of the market structure to allocate territories in order to minimize competition. Such concerted action is usually termed a 'horizontal' restraint, in contradistinction to combinations of persons at different levels of the market structure, e.g., manufacturers and distributors, which are termed 'vertical' restraints. This Court has reiterated time and time again that '[h]orizontal territorial limitations ... are naked restraints of trade with no purpose except stifling of competition.' "

■ In asserting that the restraint before us is a per se violation of the antitrust law, Crown argues that the alleged restraint is an agreement between competitors on the same market level to allocate territories or to minimize competition, and that such a restraint is properly characterized as a "horizontal restraint", which have been held to be per se violations of the Federal Antitrust Law. Conversely, Bankston argues that the restraint is a vertical restraint, that is, a restraint not to compete

1. Citing *Board of Trade v. United States*, 246 U.S. 231, 38 S.Ct. 242, 62 L.Ed. 683 (1918).

2. *Standard Oil Co. v. United States*, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911); *United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956); *United States v. American Tobacco Co.*, 221 U.S. 106, 31 S.Ct. 632, 55 L.Ed. 663 (1911); and

*Teleco, Inc. v. Ford Industries, Inc.*, 587 P.2d 1360 (Okl.1978).

3. *Times-Picayune Publishing Co. v. United States*, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277 (1953); *United States v. Consolidated Laundries Corporation*, 291 F.2d 563 (N.Y.1961); and *Teleco, Inc. v. Ford Industries, Inc.*, 587 P.2d 1360 (Okl.1978).

between two parties operating on different market levels, and therefore must be measured by the "rule of reason", because vertical restraints are not per se violations of either Federal or State Antitrust Laws.

We agree with Bankston. The evidence reflects that even if Crown was selling paint on the same market level as Bankston, nonetheless in its relationship to Bankston, Crown manufactured the paint Bankston sold to the ultimate consumer, and the relationship between Crown and Bankston was that of manufacturer and dealer. The agreement under consideration was between manufacturer and dealer, and not two manufacturers or two dealers. The agreement was by Crown as manufacturer, with Bankston as its dealer or customer, that Crown would not sell to others within Bankston's "exclusive territory", i.e., Bankston's customers, and thus was a restraint not to compete between two parties operating on different market levels, i.e., a "vertical restraint".

An agreement of this kind between a manufacturer and a customer/distributor setting up an exclusive territory within which the customer/distributor will have exclusive rights to sell does not in itself violate anti-trust provisions.[4]

In this instance, the exclusive territory within which Bankston had exclusive rights to sell was Bankston's customers, primarily CMI.

An agreement between a manufacturer and customer allocating a specific limited territory exclusively to the customer, with competitive products readily available to others, has invariably been permitted as a *reasonable* restraint of trade.[5]

The record indicates that salable lines of other paint products manufacturers were fully available to Bankston's customers and to Bankston's largest customer, CMI.

This being the case, we hold that the trial court properly refused summary judgment against Bankston, for the agreement in question was simply an agreement between the manufacturer, Crown, and its customer, Bankston, allocating a specific limited territory exclusively to the customer, Bankston, i.e., Bankston's customers, with competitive products readily available to others, and thus there is nothing in such an agreement which makes out a case of anti-trust violation.

Since Crown was not entitled to summary judgment or a judgment notwithstanding the verdict against Bankston, the trial court did not err in instructing the jury in Instruction No. 4 that the contract "subject matter was lawful" and refusing to instruct the jury concerning alleged anti-trust violations. As we said in *Kiddie v. Great Southwestern Fire Insurance Co.*, 601 P.2d 740 (Okl.1979):

"We have said it is the duty of the trial court to instruct on the issues raised by the pleadings and supported by the evidence—and nothing more. *Midland Valley Railroad Co. v. McKee*, 389 P.2d 492 (Okl.1964), and thus it is not error to refuse a requested instruction not supported by any evidence. *Skogsberg v. First National Bank of Kingman, Ks.*, 439 P.2d 957 (Okl.1968)."

As there was no evidence before the trial court to support any of Crown's anti-trust arguments, the trial court did not err as a matter of law in overruling Crown's motion for summary judgment or motion for judgment notwithstanding the verdict, or Crown's proposed instruction.

### III.

We next consider whether the alleged contract between Bankston and Crown violated the provisions of 15 O.S. § 217 (1971),

---

4.  *United States v. Arnold, Schwinn & Company*, 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967); *Colorado Pump Supply Company v. Febco, Inc.*, 472 F.2d 637 (10th Cir. 1973); *Top-All Varieties, Inc. v. Hallmark Cards, Inc.*, 301 F.Supp. 703 (S.D.N.Y.1969); *Packard Motor Car Company v. Webster Motor Car Company*,

100 U.S.App.D.C. 1961, 243 F.2d 418 (1957); *Schwing Motor Company v. Hudson Sales Corporation*, 239 F.2d 176 (4th Cir. 1956).

5.  *United States v. Arnold, Schwinn & Company*, supra; *Teleco, Inc. v. Ford Industries, Inc.*, 587 P.2d 1360 (1978).

thus entitling Crown to summary judgment.

Chapter 4 of Title 15, which deals with unlawful contracts, provides, at Section 217, that:

"Every contract by which any one is restrained from exercising a lawful profession, trade or business of any kind, otherwise than as provided by the next two sections, is to that extent void."

The next two sections, Sections 218 and 219, of Title 15, deal with matters not related to this suit, the former dealing with restraints in anticipation of a dissolution of a partnership, and the latter dealing with the sale of the goodwill of a business.

■ Crown argued, both in the trial court and on appeal, that the alleged contract between Bankston and Crown, whereby Crown agreed not to call on or solicit business from any of Bankston's customers in an attempt to sell directly to them, violated the provisions of 15 O.S. § 217 (1971), as such a contract would restrain Crown from exercising its lawful profession, that of manufacturing and selling Paint. In *Board of Regents, etc. v. Nat. Collegiate Ath. Ass'n*, 561 P.2d 499, 508 (1977), in determining whether an NCAA practice constituted a violation of 15 O.S. § 217, this Court stated that, "Statutes invalidating contracts in restraint of trade must be determined by its reasonableness in view of the particular circumstance. An agreement in illegal restraint of trade is void, but an agreement in reasonable restraint of trade is valid." [Footnotes omitted] Thus, we see that not all restraints of trade are outlawed by 15 O.S. 1971 § 217. Only those restraints which are unreasonable are outlawed.

■ As we discussed in part III of our opinion, the agreement in question was nothing more than a vertical agreement between a manufacturer and his customer allocating a specific limited territory exclusively to the customer. Where, as here, competitive products are readily available to others, such an arrangement has invariably been upheld as a reasonable restraint

of trade. Since the only evidence before the court demonstrated a reasonable restraint of trade, Crown was not entitled to summary judgment, directed verdict, or judgment notwithstanding the verdict on this issue, and the jury was properly instructed concerning the lawfulness of the contract.

## IV.

■ Lastly, we consider whether the trial court erred in holding that the prevailing party in this suit was entitled to attorney fees. We hold that the trial court did not err in so holding. Under the provisions of 12 O.S. § 936 (1971), the prevailing party in certain civil actions shall be allowed a reasonable attorney fee to be set by the court and to be taxed and collected as costs. That statute reads:

"In any civil action to recover on an open account, a statement of account, account stated, note, bill, negotiable instrument, or *contract relating to the purchase or sale of goods, wares, or merchandise*, or for labor or services, unless otherwise provided by law or contract which is the subject [of] the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs." [Emphasis added]

The case before us was initiated as a suit on an open account in which Crown sought to receive the benefit of its contract—payment by Bankston. In his counterclaim, Bankston sought the benefit of his bargain, asking the court to award damages for breach of provisions not to compete. The prevailing party in the counterclaim action is entitled to attorney fees, as the suit involved is a suit on a "contract relating to the purchase or sale of goods, wares, or merchandise."

AFFIRMED.

HODGES, LAVENDER, SIMMS, DOOLIN, HARGRAVE and OPALA, JJ., concur.