**OAKRIDGE INVESTMENTS, INC., d/b/a Oakridge Mobile Homes, Appellant,**

v.

**SOUTHERN ENERGY HOMES, INC., Appellee.**

No. 63881.

Court of Appeals of Oklahoma, Division 2.

May 6, 1986.

John A. Gladd, Gibbon, Gladd & Associates, Tulsa, for appellant.

Stephen C. Stapleton, Feldman, Hall, Franden, Woodard & Farris, Tulsa, for appellee.

MEANS, Judge.

Plaintiff appeals from the trial court's order sustaining Defendant's motion for summary judgment. Having reviewed the record and applicable law, we affirm.

Plaintiff Oakridge is a mobile home dealership in Henryetta. In the summer of 1983, Oakridge wanted to expand its sales of double wide homes. It contacted defendant Southern Energy Homes in Alabama and purchased a double wide office to use at its Henryetta lot. Oakridge was given a five percent rebate on the sale, a discount customarily reserved for dealers. Over the next few months, Oakridge ordered two more double wide homes from Southern. Both orders were for either employees or their relatives.

In the fall of 1983, customers from Oakridge visited Economy Housing in Tulsa. Economy and its owner, Joe Branscom, were the top sellers of Southern Homes in the United States, with more than two million dollars in sales yearly. The customers viewed the Southern display units on Economy's Tulsa lot and informed the salespeople that they could get the homes cheaper in Henryetta. When these facts were reported to Branscom, he called Southern and told them basically that they could sell to "either Oakridge or me."

Not wanting to offend its top seller, Southern did not respond to the next order

it received from Oakridge and Oakridge lost the sale. Southern later informed Oakridge that it would not fill any more orders for retail customers, but that those customers would have to buy from either Economy Housing or a dealership in Yukon.

Oakridge brought this action against Southern, Economy Housing, and Joe Branscom, alleging violations of the Oklahoma antitrust statutes and tortious interference with contractual relationships. Southern's demurrer to the tortious interference count was sustained. Southern moved for summary judgment, asserting that its actions, as a matter of law, did not violate the antitrust statutes. The motion was granted and Oakridge has appealed.

This appeal concerns only the motion for summary judgment as to Southern. None of the other defendants are involved. On appeal, Oakridge attempts to raise numerous fact issues which it claims are in dispute. Even accepting Oakridge's statement of the facts, if Southern's actions do not violate the antitrust laws, the summary judgment was proper.

In its brief, Oakridge places great emphasis on whether Southern had an unwritten agreement with its dealers not to distribute its product through other dealers within 75 to 100 miles. Oakridge claims that it was never told of such an agreement and that this type of agreement violates the antitrust statutes. As pointed out by Southern in its motion for summary judgment and on appeal, the presence of this disputed agreement is not determinative of antitrust violations.

The Oklahoma antitrust statutes are similar to federal antitrust legislation. Thus, interpretation of the federal legislation "provides valuable assistance in interpreting the provisions of the Oklahoma statutes." *Teleco, Inc. v. Ford Industries, Inc.*, 587 P.2d 1360, 1362 (Okla.1978) (footnote omitted). Title 79 O.S.1981 § 1, is nearly identical to 15 U.S.C. § 1 (1982), and provides:

> Every act, agreement, contract, or combination in the form of trusts, or otherwise, or conspiracy in restraint of trade or commerce within this state is hereby declared to be against public policy and illegal.

Oakridge's cause of action against Southern is contingent upon there being a conspiracy in restraint of trade and commerce in violation of section 1. Its basic contention is that a conspiracy existed between Southern and Economy Housing to cancel Oakridge's distributorship and to refuse to allow Oakridge to sell Southern homes.

■ As the *Teleco* court stated, "It has long been recognized that every agreement concerning trade, and every regulation of trade, restrains trade to some extent." 587 P.2d at 1362. The very essence of any trade agreement is to bind or restrain. *Board of Trade v. United States*, 246 U.S. 231, 238, 38 S.Ct. 242, 244, 62 L.Ed. 683 (1918). Although a literal reading of section 1 of both the federal and Oklahoma antitrust statutes would seem to outlaw every conceivable contract concerning trade, the courts have refused such an interpretation. *See, e.g., Standard Oil Co. v. United States*, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911). Courts have read section 1, implying a "rule of reason," under which only those acts, contracts, agreements, or combinations which prejudice public interests by unduly restricting competition, or unduly obstructing the due course of trade, or which injuriously restrain trade, are unlawful. *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956). *See also, Board of Regents v. National Collegiate Athletic Association*, 561 P.2d 499, 505–6 (Okla.1977). Thus, only those restraints of trade which are unreasonable are outlawed. *Crown Paint Co. v. Bankston*, 640 P.2d 948 (Okla.1981), *cert. denied*, 455 U.S. 946, 102 S.Ct. 1444, 71 L.Ed.2d 659 (1982).

In *Northern Pacific Ry. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958), the Court recognized that certain agreements, "because of their pernicious effect on competition and lack of

any redeeming virtue are conclusively presumed to be unreasonable" and illegal. These most commonly involve agreements not to compete between competitors at the same market level, such as manufacturer and manufacturer or dealer and dealer. Such agreements are referred to as "horizontal restraints." *See United States v. Topco Associates, Inc.*, 405 U.S. 596, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972). The Court has generally applied a per se rule to horizontal restraints, finding them "naked restraints of trade with no purpose except stifling of competition." *White Motor Co. v. United States*, 372 U.S. 253, 263, 83 S.Ct. 696, 702, 9 L.Ed.2d 738 (1963).

■ By contrast, a "vertical restraint" of trade is an agreement not to compete between two parties operating on different market levels, such as an agreement between a manufacturer and distributor or dealer. *Crown Paint*, 640 P.2d at 950–51. While vertical restrictions have market impact because of their potential for simultaneous reduction of intrabrand competition and stimulation of interbrand competition, these restrictions are subject to the rule of reason. *Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977), *overruling United States v. Arnold, Schwinn & Co.*, 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967).

In the instant case, Oakridge's complaint is that Southern established an exclusive dealership with Economy, which resulted in Economy and another dealer in Yukon having a monopoly with respect to Southern homes. Such a restriction involves a vertical restraint, analyzed under the rule of reason. Furthermore, this asserted exclusive dealership involves geographic restrictions as opposed to product restrictions.

■ In order to prove that the restraint is unreasonable, Oakridge must show what the relevant market is, and then whether an unreasonable restraint exists within that market. *United States v. Grinnell Corp.*, 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). To overcome the motion for summary judgment, Oakridge must establish the existence of a definite submarket. The reasonableness of a restraint upon the market cannot be determined unless the market has been reasonably defined. *Teleco*, 587 P.2d at 1364.

Oakridge did not even attempt to define the relevant submarket or to show the extent of Southern's allegedly unlawful restrictions on this submarket. Oakridge further failed to show that Southern has either the "power to control prices or to exclude competition." *du Pont*, 351 U.S. at 391, 76 S.Ct. at 1005. Although Southern asserts that it distributes its product through only two Oklahoma dealers, it is undisputed that Southern makes no attempt to control the retail prices set by the dealers.

In support of its motion for summary judgment, Southern established that there were several other brands of double wide mobile homes available on the market. Southern's evidence showed that Economy sold Southern Emergy Homes to customers from a wide area in northeastern Oklahoma. Southern also showed that in states involving similar populations, such as Arkansas, it sold double wide homes through only two dealerships.

Oakridge did not contend that Southern's product was unique. While Oakridge asserted that Southern Energy Homes were high quality and preferred by some customers, Oakridge admitted that there were several other manufacturers who distributed similar products. The record shows that salable lines of other double wide mobile homes, comparable in price and features to Southern Energy Homes, were fully available to Oakridge's customers.

Although Oakridge attempts to attack the exclusive territory restriction as unreasonable, both *Crown Paint* and *Teleco* determined that a manufacturer who sold his product through one dealer exclusively was not in violation of the statutes. The *Crown Paint* court stated: "An agreement between a manufacturer and customer allocating a specific limited territory exclusively to the customer, with competitive products readily available to others, has invari-

ably been permitted as a *reasonable* restraint of trade." 649 P.2d at 951 (footnote omitted).

Thus, whether Southern had a 75 or 100 mile geographic area of exclusiveness for its dealers is immaterial when under the case law of this jurisdiction, Southern could distribute its product through one exclusive dealer for the entire state. In the absence of some showing that Southern's product is unique or in great demand, Oakridge has not demonstrated an antitrust violation merely because it is not allowed to sell Southern Energy Homes.

Oakridge did not attempt to establish the existence of the submarket or the impact of the restriction on that market. Although Southern may have breached its alleged contract with Oakridge by refusing to fill orders, that does not give rise to an antitrust violation. The trial court's order granting summary judgment for Southern on the issue of antitrust violations was appropriate as a matter of law and is affirmed under the authority of *Crown Paint* and *Teleco.*

REIF, concurs.

BACON, P.J., concurs specially.

BACON, Presiding Judge, specially concurring.

I concur in the result reached by the majority. Plaintiff's petition alleges in count one, restraint of trade, and in count two, tortious interference with contractual relations. The plaintiff does not plead or argue breach of contract, but pleads only restraint of trade and tortious interference. In my opinion, the trial court correctly sustained summary judgment on the two counts alleged. Since breach of contract was never pleaded or argued, I agree the trial court should be affirmed.