LUCERO, J., Circuit Judge,
dissenting.
I fear that the primary effect of today’s decision will be to injure consumers in the Oklahoma City area in both the short and long term. This is opposite of the result intended by the Oklahoma legislature. In order to conclude that a preliminary injunction was entered properly below, I must be persuaded that Star demonstrated a substantial likelihood that it would satisfy the requirements of the Oklahoma Unfair Sales Act (“OUSA”). OUSA requires Star to establish: (1) below-cost sales, (2) with the intent of inducing the purchase of other merchandise, unfairly diverting trade from a competitor, or otherwise injuring a ■ competitor, and (3) a resulting deception, lessening of competition, restraint of trade, or tendency to create a monopoly. Okla. Stat. tit. 15, § 598.3. Because Star fails to establish any element of the third section of the OUSA, the requirements for a preliminary injunction have not been met. Accordingly, I respectfully dissent from the majority’s opinion to the contrary.
Specifically, the third section of the OUSA prohibits below-cost sales “where the result of such ... sale [tends] to deceive any purchaser or prospective purchaser, or to substantially lessen competition, or to unreasonably restrain trade, or to tend to create a monopoly in any line of commerce.” Id. Applying this language, the district court found that Sam’s sales of gasoline to its members substantially lessened competition and tended to deceive purchasers or prospective purchasers. Star Fuel Marts, LLC v. Murphy Oil USA, Inc., No. Civ. 02-202-F, 2003 WL 742191, at *14 (W.D.Okla. Jan. 29, 2003). The district court did not find that Sam’s below cost sales unreasonably restrained trade or tended to create a monopoly, and the majority effectively concedes that the district court’s conclusion regarding deception of purchasers is unsupported by the record. (Maj. Op. at 651.) Thus, Star is left with all of its eggs in one basket — the contention that Sam’s below-cost sales resulted in a substantial lessening of competition.
The majority’s explanation for its conclusion that Star established substantial injury to competition is less than compelling. Noting that Sam’s gasoline sales are “high volume operations” achieved by below-cost pricing, the majority, without further elaboration, leaps to the conclusion that
this substantial increase in Sam’s market share and the corresponding de *655 crease in its competitors’ market share, coupled with the fact that the sales achieved by Sam’s were achieved through below-cost pricing, provide support for the district court’s finding that Sam’s sale of gasoline resulted in a substantial lessening of competition.
(Maj. Op. at 648.)
But the conclusion drawn from the foregoing generalization of the relevant facts is most assuredly erroneous. Star’s profits may have been affected by Sam’s below-cost sales. However, “[ajntitrust laws were passed for the protection of competition, not competitors.” United States v. AMR Corp., 335 F.3d 1109, 1115 (10th Cir.2003) (citation omitted). It is undisputed that Sam’s holds less than three percent of the market share in the Oklahoma gasoline market; there is no evidence in the record that even one competitor has been driven from the market by Sam’s below-cost sales, and there is not one iota of evidence that proves that there has been a substantial lessening of competition. To the contrary, all evidence demonstrates an increase — not a lessening — of competition. There may be some evidence that Star’s profits have decreased by competition, but that is not properly our concern.
Yet, even if Star could establish injury to competition by a mere showing of a reduction of its profits, it would not prevail, for Star has failed to present any evidence tending to show a dangerous probability of recoupment by Sam’s.
In determining the meaning of “substantially lessened competition” based on Oklahoma state law, we look to federal antitrust law for guidance when the language and purpose of the Oklahoma antitrust statute closely resembles that of federal antitrust law. Harolds Stores, Inc. v. Dillard Dept. Stores, Inc., 82 F.3d 1533, 1550-51 (10th Cir.1996); Teleco, Inc. v. Ford Indus., Inc., 587 P.2d 1360, 1362 (Okla.1978) (explaining that “the provisions of [the Oklahoma] antitrust statutes are similar to antitrust legislation, and that interpretation of Federal antitrust legislation provides valuable assistance in interpreting the provisions of the Oklahoma statutes”); Young v. Seaway Pipeline, Inc., 576 P.2d 1148, 1150 (Okla.1977) (“Oklahoma [antitrust] statutes are patterned after the federal enactments being at times both cumulative and complimentary to federal legislation.”); Oakridge Invs., Inc. v. Southern Energy Homes, Inc., 719 P.2d 848, 850 (Okla.App.1986).[1]
Although the majority acknowledges that the Oklahoma Supreme Court has looked to federal antitrust law to interpret other state antitrust statutes, see, e.g., Beville v. Curry, 39 P.3d 754, 761 (Okla.2001) *656 (looking to federal antitrust law for guidance in interpreting the Oklahoma Antitrust Reform Act), it rejects Sam’s reliance on Beville for the proposition that Star must demonstrate a dangerous probability of recoupment. (Maj. Op. at 649 n. 3.) In support of this conclusion, the majority explains that in light of the purposes of the OUSA and the absence of a federal statutory counterpart, federal antitrust law should not be authoritative in the instant case (Id.)
I disagree with the majority’s conclusion that we should not look to federal law for guidance in interpreting the OUSA. A close review of federal antitrust statutes reveals that the purpose and language of the OUSA are directly analogous to § 2(a) of the Clayton Act as amended by the Robinson-Patman Act. Relevant to our inquiry, the Robinson-Patman Act declares it unlawful to engage in below-cost pricing that injures direct competitors when the result is to substantially lessen competition or tend to create a monopoly. Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 219, 113 S.Ct. 2578, 125 L.Ed.2d 168 (1993). The Robinson-Patman Act provides:
It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality ... where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.
15 U.S.C. § 13(a) (emphasis added); Brooke Group, 509 U.S. at 219-20, 113 S.Ct. 2578. “By its terms, the Robinson-Patman Act condemns price discrimination only to the extent that it threatens to injure competition.” Brooke Group, 509 U.S. at 220, 113 S.Ct. 2578. Further, the Supreme Court explained that to establish a violation under the Robinson-Patman Act, it is not enough to show intent to injure competition and below-cost sales; a violation also requires a demonstration of requisite effect, e.g., substantially lessened competition. Id. at 225, 113 S.Ct. 2578.
Both the language and the purpose of the OUSA mirror those of the Robinson-Patman Act. Each statute protects direct competitors from below-cost pricing that results in “substantially lessened competition.” See 15 U.S.C. § 13(a); Okla. Stat. tit. 15, § 598.3. Contrary to the majority’s conclusion, the OUSA does have a counterpart in federal antitrust law, and I would therefore look to the Robinson-Patman Act for guidance.
Interpreting the Robinson-Patman Act, the Supreme Court has explained that “the Robinson-Patman Act should be construed consistently with broader policies of the antitrust laws.” Brooke Group, 509 U.S. at 220, 113 S.Ct. 2578. In an attempt to define the effect of substantially lessened competition, the Court explained:
[wjhether the claim alleges predatory pricing under § 2 of the Sherman Act or primary-line price discrimination under the Robinson-Patman Act, two prerequisites to recovery remain the same. First, a plaintiff seeking to establish competitive injury resulting from a rival’s low prices must prove that the prices complained of are below an appropriate measure of its rival’s costs.... The second prerequisite to holding a competitor liable under the antitrust laws for charging low prices is a demonstration that the competitor had a reasonable prospect, or, ... a dangerous *657 probability, of recouping its investment in below-cost prices.
Id. at 222-24, 113 S.Ct. 2578 (citations omitted).
Applying this two-part test, we have recognized that while “the short-run loss [of below-cost pricing] is definite ... the long-run gain depends on successfully neutralizing the competition,” and that “the success of any predatory scheme depends on maintaining monopoly power for long enough both to recoup the predator’s losses and to harvest some additional gain.” AMR, 335 F.3d at 1114 (citation omitted). Consistent with the requirements of the Robinson-Patman Act, I would require Star to establish that Sam’s has a dangerous probability of recouping its investment in below-cost prices. See Brooke Group, 509 U.S. at 223-24, 113 S.Ct. 2578. “Without a dangerous probability of recoupment, competition remains unharmed even if individual competitors suffer.” AMR, 335 F.3d at 1115.
I do not dispute the majority’s conclusion that Sam’s priced its gasoline below cost. However, it is not enough for Star to have alleged that it was financially harmed by Sam’s below-cost sales. Rather, the OUSA can only logically be read to protect businesses like Star from “substantially lessened competition” when the allegedly offending entity has enough market power to force competitors out of the market and keep them out long enough to recoup its losses. Sam’s holds less than three percent of the market share in the Oklahoma City gasoline market. Considering Sam’s limited market share and the absence of any evidence that Sam’s can recoup the losses that result from its below-cost sales of gasoline, I cannot conclude that Star has demonstrated that Sam’s below-cost sales resulted in “substantially lessened competition” under any relevant definition of the term.
The majority also concludes that evidence of below-cost pricing is prima facie evidence of substantial injury to competition. Even assuming arguendo that the majority correctly reaches this conclusion, I disagree that “[t]he prima facie showing stands unrebutted.” Star Fuel Marts, 2003 WL 742191, at *13. We have explained that “the mechanism by which a firm engages in predatory pricing — lowering prices — is the same mechanism by which a firm stimulates competition;” moreover, “mistaken inferences may deter the very conduct the antitrust laws were created to protect.” AMR, 335 F.3d at 1114 (quotations omitted). Before the district court, Sam’s presented the testimony of Dr. Jadlow and Mr. Wilkerson, both of whom testified that Sam’s lower prices did not diminish competition in the Oklahoma City gasoline market; rather, Sam’s lower prices may actually have stimulated competition in the relevant market. At the very least, this evidence was sufficient to rebut the prima facie evidence of lessened competition. Thus, the majority’s statement that the district court’s determination that the prima facie evidence of the result of substantially lessened competition stands unrebutted is clearly erroneous as well.
Star’s failure to establish any of the OUSA’s requisite results under the third requirement of the statute is fatal to its attempt to demonstrate a substantial likelihood of success on the merits. Without such a likelihood, the preliminary injunction cannot stand. For the foregoing reasons, I DISSENT.

. Oklahoma is not alone in its reliance on federal antitrust statutes to interpret similar state antitrust statutes and provisions. See Int’l Healthcare Mgmt. v. Hawaii Coalition for Health, 332 F.3d 600, 609 (9th Cir.2003) (interpreting Hawaii antitrust statutes "in accordance with judicial interpretations of similar federal antitrust statutes”); Alpha Shoe Serv. v. Fleming Cos., Inc., 849 F.2d 352, 353 (8th Cir.1988) (same, Missouri); Mikeron, Inc. v. Exxon Co., U.S.A., 264 F.Supp.2d 268, 276 (D.Md.2003) (same, Maryland); Reading Int’l v. Oaktree Capital Mgmt. LLC, 2004-1 Trade Cases P 74,267, 2003 WL 22928728, at *24 (S.D.N.Y. Dec. 10, 2003) (same, New York); Urdinaran, M.D. v. Aarons, 115 F.Supp.2d 484, 492 (D.N.J.2000) (same, New Jersey); Iron Workers Local Union No. 17 v. Philip Morris Inc., 23 F.Supp.2d 771, 791 (N.D.Ohio 1998) (same, Ohio); Rockholt Furniture, Inc. v. Kincaid Furniture Co., Inc., 1998 WL 1661384, at *7 (E.D.Tenn. July 6, 1998) (same, Tennessee); Smalley & Co. v. Emerson & Cuming, Inc., 808 F.Supp. 1503, 1516 (D.Colo.1992) (same, Colorado); City of St. Paul v. FMC Corp., 1990 WL 259683, at *2 (D.Minn. Nov.14, 1990) (same, Minnesota); Sharp v. Commercial Solvents Corp., 232 F.Supp. 323, 327 (N.D.Tex.1964) (same, Texas).